UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEAN THOMAS and
MARGARET THOMAS,

        Plaintiffs,

  and                                                    Case No. 17-C-888

WISCONSIN PHYSICIANS SERVICE
INSURANCE CORPORATION,

        Involuntary Plaintiff,

  v.

FORD MOTOR COMPANY,

        Defendant.

## DECISION AND ORDER

Plaintiffs Dean and Margaret Thomas brought this suit advancing claims of negligence and strict liability against defendant Ford Motor Company. The Thomases have named Wisconsin Physicians Service Insurance Corporation (WPS) as an involuntary plaintiff in this action to resolve any subrogation interest it might have in the proceeds. Ford has filed motions to dismiss against both the Thomases and WPS (collectively referred to as Plaintiffs) pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, asserting that it is not subject to personal jurisdiction in Wisconsin. Plaintiffs have moved for an extension of time to respond to the motions in order to conduct discovery regarding personal jurisdiction. For the reasons set forth below, Ford's motions will be denied and Plaintiffs' motion will be denied as moot.

**BACKGROUND**

Dean and Margaret Thomas, residents of Green Bay, Wisconsin, owned a 2009 Ford Flex that was primarily designed and developed in Michigan and assembled in Canada. Initially, Hertz-Rent-A-Car located in San Francisco, California purchased the Flex from an Oklahoma City, Oklahoma Ford dealership. Although it is unclear how the vehicle ended up in Wisconsin, the Thomases purchased the Ford Flex on June 30, 2010, from Eric von Schledorn Ford Inc. located in Random Lake, Wisconsin. The purchase also included the remainder of the manufacturer's warranty. The Thomases titled, licensed, registered, and insured the Ford Flex in Wisconsin and serviced the vehicle at Dorsch Ford Lincoln in Green Bay, Wisconsin until the warranty expired.

In October 2015, the Thomases drove their Ford Flex to Pennsylvania to visit their daughter. While driving on the Pennsylvania Turnpike in Allegheny County on October 25, 2015, Margaret hit a deer that had jumped in front of the Flex. As she slowed and moved to the shoulder of the turnpike, the Flex was rear-ended. Plaintiffs allege that upon impact, the back of the right front passenger seat where Dean was sitting malfunctioned. As a result, Dean was rendered a quadriplegic.

**ANALYSIS**

A motion to dismiss under Rule 12(b)(2) challenges whether the court has jurisdiction over a party. Though the plaintiff has the burden of proving personal jurisdiction, the burden is not a heavy one. *Advance Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 800 (7th Cir. 2014). In deciding whether personal jurisdiction exists, the court may rely on the complaint, affidavits, deposition testimony, exhibits, or other evidence in the record. *See Research Found. v. Sanofi Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The court must draw all

inferences from the record in the plaintiff's favor. *PKWare, Inc. v. Meade*, 79 F. Supp. 2d 1007, 1011 (E.D. Wis. 2000).

"A federal district court sitting in diversity must apply the personal jurisdiction rules of the state in which it sits." *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015). Under Wisconsin law, a court must engage in a two-step inquiry to determine whether it may exercise personal jurisdiction. First, the court must determine whether the defendants are subject to jurisdiction under Wisconsin's long-arm statute, Wis. Stat. § 801.05. *Kopke v. A. Hartrodt, S.R.L.*, 2001 WI 99, ¶ 8, 245 Wis. 2d 396, 629 N.W.2d 662. If the statutory requirements are satisfied, the court must then decide whether the exercise of jurisdiction comports with the requirements of due process. *Id.* Ford does not dispute that Wisconsin's long-arm statute confers jurisdiction in this case. Therefore, the court must determine whether its exercise of jurisdiction satisfies the due process requirements.

The Due Process Clause of the Fourteenth Amendment allows a court to exercise personal jurisdiction over an out-of-state defendant only if that defendant has "minimum contacts" with the forum State, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The concept of minimum contacts protects a defendant from having to litigate in a distant forum and allows the defendant to reasonably anticipate where he may be haled into court. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The primary focus of the personal jurisdiction analysis "is the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Fran. Cnty.*, 137 S. Ct. 1773, 1797 (2017). Personal jurisdiction may either be specific or general, "depending on the extent of the defendant's contacts with the forum state." *See*

*uBid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010); *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 16 (1984). General jurisdiction exists only when a party has "continuous and systematic" contacts with the forum State. *Id.* Corporations are found to have "continuous and systematic" contacts with a forum State in which they are incorporated and their principle place of business is located. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).

Specific personal jurisdiction is proper only if the "defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Specific jurisdiction is appropriate where (1) the defendant purposefully directed its activities at the forum State or purposefully availed itself of the privilege of conducting business in that State and (2) the defendant's forum-related activities caused the plaintiff's injury. *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The purposeful availment inquiry "is ultimately about whether the party should reasonably anticipate being haled into court in the forum state." *Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854, 859 (7th Cir. 2016).

Plaintiffs assert that this court has specific personal jurisdiction over Ford based on the stream of commerce theory. It has long been established that a court may properly exercise jurisdiction over an out-of-state corporation when it "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp.*, 444 U.S. at 297 98. Nevertheless, the Supreme Court has yet to reach a consensus on the proper test to determine whether a defendant "purposefully avails" itself in the forum State under the stream of commerce theory.

The Court acknowledged the stream of commerce theory in *World-Wide Volkswagen*, but further elaborated on the theory in *Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102 (1987). In that case, a plaintiff injured in a motorcycle accident in California brought suit in California state court against the Japanese manufacturer of the allegedly defective motorcycle tires. *Id.* at 105 06. While the Court unanimously agreed that the California state court lacked personal jurisdiction over the manufacturer, the case resulted in numerous tests articulating when a defendant purposefully avails itself in a forum State, none of which were approved by a majority of the Court. Justice O'Connor, writing for a plurality of four, endorsed what is now known as the "stream of commerce plus" theory. She stated that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* at 112. Instead, some "additional conduct" establishing the defendant's "intent or purpose to serve the market in the forum State" is necessary. *Id.* This additional conduct may include "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* Though Justice O'Connor did not conclusively limit "additional conduct" to these particular examples, she did observe that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.*

Justice Brennan, also writing for four justices, rejected the stream of commerce plus approach, and instead supported a less-demanding test. He found that a defendant participating in "the regular and anticipated flow of products from manufacture to distribution to retail sale" is

5

properly subject to jurisdiction so long as the defendant is "aware that the final product is being marketed in the forum State." *Id.* at 117 (Brennan, J., concurring in part and concurring in judgment). Justice Stevens, joined by two justices, believed the constitutional determination of minimum contacts cannot assume an "unwavering line . . . between 'mere awareness' that a component will find its way into the forum State and 'purposeful availment' of the forum's market." *Id.* at 122 (Stevens, J., concurring in part and concurring in judgment). Instead, he concluded that a court must evaluate "the volume, the value, and the hazardous character" of the defendant's product to determine purposeful availment. *Id.*

A similarly-divided Court revisited the issue in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011). Justice Kennedy, writing for the plurality, adopted Justice O'Connor's stream of commerce plus approach. *Id.* at 885 (finding that "authority to subject a defendant to judgment depends on purposeful availment, consistent with Justice O'Connor's opinion in *Asahi*"). Justice Breyer concurred in the judgment and declined to support any of the separate opinions from *Asahi*. *Id.* at 888 (Breyer, J., concurring in judgment). Relying on *World-Wide Volkswagen*, Justice Breyer concluded that a single, isolated sale of a defendant's product in the forum State "even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place" is not an adequate basis to assert personal jurisdiction over the defendant. *Id.*

The Seventh Circuit has not explicitly endorsed a single stream of commerce analysis since the Court's decision in *J. McIntyre*, though it indicated in *Dehmlow v. Austin Fireworks* that it would apply the more permissive approach in Justice Brennan's *Asahi* concurrence until a majority of the Supreme Court rejected the test. 963 F.2d 941, 947 (7th Cir. 1992). In any event, the evidence of

6

record demonstrates that Plaintiffs have satisfied even the more stringent test set forth in Justice O'Connor's plurality opinion in *Asahi* and subsequently adopted by Justice Kennedy in *J. McIntyre*.

Plaintiffs allege that Ford has been continuously licensed to do business in Wisconsin since 2003 and has designated CT Corporation System located in Madison, Wisconsin as its registered agent for service of process. They contend that Ford's advertising in Wisconsin is pervasive and its website specifically targets Wisconsin residents by allowing them to view the incentives and offers available in their locality. ECF No. 15 at 3. Although Plaintiffs did not provide Wisconsin-specific sales information, they noted that Ford has 122 dealerships located in Wisconsin that sell new and used Ford-brand vehicles. Ford certifies "pre-owned" vehicles and offers incentives for consumers that purchase a certified pre-owned Ford vehicle from one of its dealers. *Id.* at 4. Plaintiffs allege that Ford is willing to serve consumers in Wisconsin and, as a result, has derived benefits from Wisconsin residents purchasing and owning its new and used vehicles. In sum, Plaintiffs have made a *prima facie* showing that Ford purposefully availed itself of the privilege of conducting activities in Wisconsin.

Ford asserts that the court cannot exercise specific jurisdiction over Ford because its general Wisconsin-specific contact is unrelated to the Thomases' 2009 Ford Flex and did not cause Plaintiffs' injuries. It contends that the Ford Flex was primarily designed and developed in Michigan, assembled at a Ford plant in Canada, and sold through an independent Ford dealership located in Oklahoma City, Oklahoma to Hertz Corporation. The vehicle was then shipped to Hertz-RAC South in San Francisco, California. Citing the Supreme Court's most recent decisions regarding specific personal jurisdiction, *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017), and *Walden v. Fiore*, 134 S. Ct. 115 (2014), Ford argues

that because it was not involved with any subsequent sales of the 2009 Ford Flex after it was delivered to the Oklahoma dealership or its eventual entry into Wisconsin, the facts alleged in Plaintiffs' complaint do not arise out of and are not related to those activities Ford significantly and purposefully directs at Wisconsin. These cases, however, did not alter the specific jurisdiction analysis in the way that Ford suggests.

In *Bristol-Myers*, for instance, 86 California residents and 592 residents from 33 other states filed a mass products liability action against Bristol-Myers in California state court, alleging injuries caused by the pharmaceutical company's drug Plavix. 137 S. Ct. at 1777. After focusing on the due process considerations as applied to the nonresident plaintiffs suing in California, the Supreme Court concluded the California courts could not exercise personal jurisdiction over their claims. The Court observed that the nonresidents "were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." *Id.* at 1781. The Court noted that in determining whether personal jurisdiction is present, a court must consider a variety of interests, including "'the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice.'" *Id.* at 1780 (quoting *Kulko v. Superior Court of Cal., City & Cnty. of San Fran.*, 436 U.S. 84, 92 (1978)). The Court ultimately concluded that absent a connection between the nonresident plaintiffs' claims and the forum State, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* Even though the nonresidents could not bring a claim in California, however, the Court recognized that they could pursue their claims in their respective home states. *Id.* at 1783. And even more significant to this case, personal jurisdiction over the claims of the California plaintiffs who purchased the product in California was never even questioned.

8

Moreover, in *Walden*, while stationed at a Georgia airport, a police officer working as a deputized DEA agent searched two passengers and seized a large sum of cash from them, believing it was connected to drug-related activity. 134 S. Ct. at 1119. The passengers subsequently filed a lawsuit in the United States District Court for the District of Nevada, seeking damages under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). The Supreme Court held that the officer lacked minimal contacts with Nevada because all of his actions giving rise to the passengers' claims occurred outside the forum State. The Court recognized that the "defendant's suit-related conduct must create a substantial connection with the forum State," and that this "relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Id.* at 1121 22 (quoting *Burger King*, 471 U.S. at 475). Further, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* In sum, the Court concluded that the specific jurisdiction analysis must focus on the "relationship among the defendant, the forum, and the litigation." *Id.*

In this case, Plaintiffs have alleged a connection between their claims and Wisconsin. Even though the Thomases' accident did not occur in Wisconsin, Wisconsin has an interest in adjudicating Plaintiffs' claims here because its residents were allegedly injured by a Ford product they purchased in the forum State. Along with the purchase of the 2009 Ford Flex, the Thomases received the remainder of Ford's manufacturer warranty on the vehicle, and serviced the vehicle under that warranty at a Ford dealership in the forum State. The Thomases also titled, licensed, registered, and insured the Ford Flex in Wisconsin since its purchase. Plaintiffs have also shown that they are not the only link between Ford and Wisconsin and that their case is not based on any "random,

9

fortuitous, or attenuated" contacts Ford has made in Wisconsin. *Id.* at 1123 (quoting *Burger King*, 471 U.S. at 475). To satisfy the due process element of the personal jurisdiction analysis, the particular product causing the injury need not be placed in the forum State by the defendant. Stated differently, "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.*, 444 U.S. at 297; *see also Bristol-Myers*, 137 S. Ct. at 1785 (noting that court must consider whether "the defendant has 'purposefully directed' his activities at the residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities'" (internal citation omitted)). The fact that Ford did not initially sell the Thomases' Ford Flex in Wisconsin is wholly irrelevant to the personal jurisdiction inquiry. Rather, it is Ford's willingness to serve and sell to Wisconsin consumers, its pervasive marketing on multiple platforms to Wisconsin residents, and its accrual of benefits from Wisconsin consumers buying its products that make it reasonable for Ford to anticipate being haled into a Wisconsin court. Plaintiffs have satisfied the due process requirements of the personal jurisdiction inquiry. Accordingly, Ford is subject to personal jurisdiction in this court for the purposes of this action. Because no further discovery is required on this matter, Plaintiffs' motion for an extension of time to respond in order to conduct discovery regarding personal jurisdiction will be denied as moot.

## CONCLUSION

For the foregoing reasons, Ford's motions to dismiss (ECF Nos. 9 & 17) are **DENIED**. It is further ordered that Plaintiffs' motion for an extension of time to conduct discovery (ECF No. 13)

10

is **DENIED as moot**. The Clerk is directed to set this matter on the court's calendar for further scheduling.

Dated this  10th  day of October, 2017.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court