UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEAN THOMAS and
MARGARET THOMAS,

                    Plaintiffs,

          and                                          Case No. 17-C-888

WISCONSIN PHYSICIANS SERVICE
INSURANCE CORPORATION,

                    Involuntary Plaintiff,

     v.

FORD MOTOR COMPANY,

                    Defendant.

## DECISION AND ORDER

     Plaintiffs Dean and Margaret Thomas initiated this action against Defendant Ford Motor

Company advancing claims of negligence and strict liability for injuries sustained by Mr. Thomas

when the 2009 Ford Flex in which he was a passenger was struck from behind by a 2014 Jeep

Compass on the Pennsylvania turnpike.  The court held a final pretrial conference in this case on

March 15, 2019.  The court will now address Plaintiffs' motion *in limine* number three, which the

court took under advisement.

     Plaintiffs' motion seeks to prohibit any evidence or reference to the fact that Mr. Thomas

had been diagnosed with diffuse idiopathic skeletal hyperostosis (DISH) and any argument that Mr.

Thomas' injuries resulted from DISH.  Plaintiffs argue that the evidence is prejudicial, irrelevant,

and runs afoul of the eggshell plaintiff rule.  Under the eggshell plaintiff rule, a tortfeasor must take

his victim as the tortfeasor finds him. *See Richman v. Sheahan*, 512 F.3d 876, 884 (7th Cir. 2008) (describing the "eggshell skull" rule). "[I]f the defendant's actions were the precipitating cause of the injury complained of, and such injury was the natural consequence of the actions, the defendant is liable, although the plaintiff's physical condition might have aggravated the injury." *Anderson v. Milwaukee Ins.*, 161 Wis. 2d 766, 769, 468 N.W.2d 766 (Wis. Ct. App. 1991) (citing *Vosburg v. Putney*, 86 Wis. 278, 280, 56 N.W.2d 480 (1893)). At the same time, however, a tortfeasor cannot be responsible for the damages the tortfeasor did not cause.

Ford intends to present evidence of Mr. Thomas' preexisting condition to rebut causation. In other words, Ford asserts that the evidence would establish that the allegedly defective design of the seat did not cause the injury and an alternative design would not have prevented the injury. It argues that Mr. Thomas' condition rendered him more susceptible to injury even if the seat had been upright or the degree of reclination had only been 30 degrees. To support its theory, Ford cites to its expert, Dr. Viano, who suggests that Mr. Thomas was at an increased risk of spinal injury due to the preexisting condition. Though Ford may not offer any evidence or testimony suggesting that DISH *caused* Mr. Thomas' injuries, Ford may offer evidence of Mr. Thomas' pre-existing condition to rebut Plaintiffs' theory of causation. The court will instruct the jury that the evidence is admissible for this limited circumstance.

Plaintiffs argue that if Ford is permitted to introduce evidence regarding DISH, then certain evidence pertaining to DISH should be excluded in any event. Plaintiffs seek to preclude any reference to Dr. Viano's article, *Influence of DISH, Ankylosis, Spondylosis and Osteophytes on Serious-to-Fatal Spinal Fractures and Cord Injuries in Rear Impacts*, which is not set to be published until April 2, 2019, as well as his conclusions or research included therein. At the time

2

of his deposition, Dr. Viano stated that he submitted an abstract to the Society of Automotive Engineers regarding this article but the article was not yet drafted at that time. The introduction of this article, which will not be published until one week before the trial, would be prejudicial to Plaintiffs. Because the article was not drafted at the time of his deposition, Plaintiffs have not had an opportunity to question Dr. Viano about its contents. Although Ford has offered to make Dr. Viano available for a one-hour telephonic deposition to allow Plaintiffs to question Dr. Viano about the article, the court will not require Plaintiffs to engage in further discovery at this late stage. Accordingly, Ford will not be permitted to use the article in its case in chief. To the extent the underlying research contained in the article was available at the time of Dr. Viano's deposition and forms the basis of his report, however, Dr. Viano will be permitted to testify about that research.

Plaintiffs also seek to preclude any reference to Dr. Viano's paper published on extension fractures. During his deposition, Dr. Viano was asked whether he could cite any cases in which a properly-seated occupant, in a high retention seatback, was involved in a rear impact collision that resulted in fractures like Mr. Thomas'. Dr. Viano referenced a paper on extension fractures he published that included a case in which he reviewed x-rays of one individual with DISH, though the condition was not diagnosed by the treating clinician. He stated that some radiologists agreed with his conclusion that the individual had DISH. Although Dr. Viano will not be allowed to testify about the fact that other radiologists agreed with his conclusion that the individual had DISH, this paper on extension fractures is relevant to the issues in this case and will therefore not be excluded.

Plaintiffs further seek to preclude images of DISH shown in Dr. Viano's report because he failed to save the citations of the articles from which those images were obtained and could not provide their sources. Ford asserts that it only intends to use these images as demonstrative

exhibits. Because these images will only be used as demonstratives, and not as substantive evidence, their use is permissible. *See Baugh ex rel. Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701, 707 (7th Cir. 2013) (noting that demonstratives allow "parties and the court to avoid protracted disputes regarding the admissibility of demonstrative exhibits that might arise if such an exhibit were being offered as substantive evidence").

Finally, Plaintiffs seek to preclude any opinion that attempts to compare the strength of a spine with DISH with that of a normal spine. Dr. Viano testified at his deposition about a study conducted by Dr. Narayan Yoganandan which showed that the degenerative spine is weaker than a normal healthy spine. Plaintiffs contend that this opinion is inadmissible because Ford has presented no literature or reliable evidence showing that DISH is equivalent to other degenerative changes. Ford asserts that Dr. Viano explained in his report that DISH is a subset of degenerative spine conditions and found that Mr. Thomas had degenerative changes in his spine that affected the injury outcome. It argues Dr. Yoganadan's study about the strength of a degenerative spine is therefore relevant. The court agrees. Plaintiffs may raise their criticisms regarding the sample size and the axial loading addressed in the Yoganadan study as well as their contention that DISH is not equivalent to other degenerative changes on cross-examination.

For these reasons, Plaintiffs' motion in limine number three is **GRANTED-IN-PART** and **DENIED-IN-PART**. The court reminds the parties that its rulings on the motions *in limine* are preliminary and can be revisited at trial as the case unfolds.

**SO ORDERED** this  21st  day of March, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court